UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Sidney E. Taylor,                                    Case No. 17-55790-MBM
                                                     Chapter 7
                        Debtor.                      Hon. Marci B. McIvor
_____/

**TRUSTEE'S MOTION FOR ORDER (1) APPROVING SALE
OF VACANT LAND FREE AND CLEAR OF LIENS, CLAIMS,
AND INTERESTS WITH ALL LIENS, CLAIMS, AND
INTERESTS ATTACHING TO THE PROCEEDS OF SALE;
AND (2) AWARDING FEE TO REAL ESTATE BROKER**

### Jurisdiction

1.      On November 13, 2017, Sidney Taylor filed a petition for relief under

Chapter 11 of the U.S. Bankruptcy Code. The case converted to Chapter 7 on

September 12, 2018, and Homer W. McClarty was appointed the Chapter 7

Trustee.

2.      This motion is brought under 11 U.S.C. § 363 and B.R. 6004.

3.      This is a core proceeding over which this Court has jurisdiction. *See*

28 U.S.C. § 157(b)(2)(A) and (N) and 28 U.S.C. §1334.

### Background

4.      The bankruptcy estate owns vacant land on Heather Hills Rd. in the

City of Farmington Hills, County of Oakland, State of Michigan, parcel nos. 23-

29-427-023 and 23-29-427-024, more fully described on Exhibit A.

5. The Oakland County Treasurer and Farmington Hills Treasurer may assert liens against the vacant land for unpaid real property taxes and assessments.

6. On November 5, 2018, this Court entered an order authorizing the Trustee to employ Century 21 Today, Inc. as real estate broker to market and sell the vacant land based on a commission of 10% of the gross proceeds (doc. # 237).

### Offer to Purchase

7. Through the efforts of Century 21 Today, the Trustee has received an offer from Prime Development Team, LLC to purchase the vacant land for $75,000. The Trustee has accepted the offer subject to further competitive bidding and bankruptcy court approval. A copy of the purchase agreement is attached as Exhibit A.

8. The vacant land will be sold without representation or warranties, whether expressed or implied, including, but not limited to, any warranties of merchantability, fitness for a particular purpose, or habitability.

### Authority to Sell Property Free and Clear of Liens, Claims, and Interests

9. Section 363(b) of the bankruptcy code provides that the Trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).

10.     Section 363(f) permits the Trustee to sell property of the estate free and clear of all liens, claims, and interests asserted in or against the property being sold if—

> ➢ Such a sale is permitted under applicable nonbankruptcy law;
>
> ➢ The party asserting the interest consents to the sale;
>
> ➢ The property interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> ➢ The property interest is subject to a bona fide dispute; or
>
> ➢ The party asserting the property interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

11 U.S.C. § 363(f).

11.     The Court may approve a sale free and clear of all property interests, so long as one of the requirements of § 363(f) is satisfied. *See In re Elliot*, 94 B.R. 343, 345 (Bankr. E.D. Penn. 1988).

12.     The Trustee believes that any property interest asserted against the vacant land is subject to bona fide dispute, would be compelled to accept a money satisfaction, or would meet one of the other § 363(f) requirements.

13.     To the extent that any property interests are in effect or asserted in or against the property, those property interests will attach to the net proceeds of the proposed sale with the same validity and priority as they attach to the vacant land.

14.     The Trustee believes that a sound business justification exists for the sale on the terms set forth in the purchase agreement. The vacant land is not necessary for any reorganization effort; the sale is subject to higher and better offers; and the sale will produce a benefit to the bankruptcy estate.

15.     The sale represents an arms-length transaction between the non-insider parties, made without fraud or collusion and no attempt has been made by either party to take any unfair advantage of the other.

**Authority to Pay Closing Costs and Taxes at Closing**

16.     The Trustee also seeks authority to pay the broker's commission, taxes, title work, and other expenses associated with the sale at closing.

**Additional Sale Terms**

17.     On or before April 22, 2019, persons wishing to submit competing bids on terms at least as favorable as those stated in the attached purchase agreement must provide a cashier's check or money order deposit in the amount of at least $3,000. The successful bidder's deposit will be non-refundable and applied toward the purchase price. Interested bidders must also provide evidence of an ability to fund the sale. The Trustee will maintain sole discretion to determine if interested bidders are qualified to bid based on their ability to close.

18.     If a deposit from a qualified bidder is timely received by Trustee's counsel, then the Trustee shall conduct an auction at the offices of Trustee's counsel, Steinberg Shapiro & Clark.

19.     The Trustee will select the bid at the conclusion of the auction that the Trustee believes to be the highest or best value for the property. The Trustee reserves the right to select the best bid, even if not the highest bid. The selected bidder must complete and sign all agreements or other documents requested by the Trustee evidencing and containing the terms and conditions of the selected bid.

20.     If, for any reason, the selected bidder fails to consummate the sale, the offeror of the second highest or best bid (subject to the same reservations), will automatically be deemed to have submitted the highest and best bid, and the Trustee will be authorized to effect the sale of the assets to such offeror without further order from the bankruptcy court. If failure to consummate the purchase of the assets is the fault of the selected bidder, their deposit will be forfeited to the Trustee, and the Trustee may seek all available damages from the defaulting bidder.

21.     The Trustee reserves the right to: a.) impose additional terms and conditions on the sale; b.) adjourn the auction; and c.) withdraw the property from the auction.

22.     If no other deposits are received by April 22, 2019, no auction will occur, and the Trustee will close the sale based on the offer made by Prime Development Team, LLC.

23.     If an auction occurs, and Prime Development Team is not the winning bidder, then Trustee has agreed to reimburse Prime Development Team's out-of-

pocket expenses, including attorney fees, due diligence, appraisal and loan application expenses, and any other expenses incurred in connection with efforts to purchase the vacant land, in an amount not to exceed $500.

24.     Additional bidders will not receive reimbursement for any out-of-pocket expenses and assume the risk that they will not win at auction.

25.     The 14-day stay provided for in Bankruptcy Rule 6004(h) shall not be in effect with respect to the sale, and the proposed sale order will be effective and enforceable immediately upon entry.

26.     Prime Development Team will be deemed a good faith purchaser for purposes of 11 U.S.C. § 363(m).

## Conclusion

The Trustee requests that this Court enter an order approving the proposed sale and granting such further relief as this Court deems appropriate.

Steinberg Shapiro & Clark


/s/ Tracy M. Clark (P60262)
Attorney for Trustee
25925 Telegraph Rd., Suite 203
Southfield, MI 48033
(248) 352-4700
Date:  April 2, 2019          clark@steinbergshapiro.com

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Sidney E. Taylor,                                    Case No. 17-55790-MBM
                                                     Chapter 7
                        Debtor.                      Hon. Marci B. McIvor
_____/

## ORDER (1) APPROVING SALE OF VACANT LAND FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS WITH ALL LIENS, CLAIMS, AND INTERESTS ATTACHING TO THE PROCEEDS OF SALE; AND (2) AWARDING FEE TO REAL ESTATE BROKER

The Chapter 7 Trustee filed a motion to sell property of the estate consisting of vacant land on Heather Hills Rd. in Farmington Hills, Michigan; parcel nos. 23-29-427-023 and 23-29-427-024 for $75,000. All parties in interest were served with notice of the motion, and no objections were timely filed. The Court finds good cause to enter this order.

IT IS ORDERED as follows:

A.      The Trustee's motion is granted in its entirety.

B.      The proposed sale of the vacant land for a purchase price of at least $75,000 is approved.

C.      The Trustee may close the sale based on the offer made by Prime Development Team, LLC or, if an auction is held, the Trustee will select the bid at the conclusion of the auction that the Trustee believes to be the highest or best value for the property and close with the selected bidder.

D.     The title company selected to close the sale contemplated by this order will accept this order as evidence that the Trustee is authorized to close a sale for at least $75,000 based solely on the Trustee's representations as to who the proper buyer is.

E.     If an auction occurs, and Prime Development Team is not the winning bidder, then Trustee may reimburse Prime Development Team's out-of-pocket expenses, including attorney fees, due diligence, appraisal and loan application expenses, and any other expenses incurred in connection with efforts to purchase the vacant land, in an amount not to exceed $500. Additional bidders will not receive reimbursement for any out-of-pocket expenses and assume the risk that they will not win at auction.

F.     The vacant land will transfer "as is, where is," and without representation or warranty, expressed or implied, of any kind, nature, or description, including, without limitation, any warranty of title or of merchantability, usability, or fitness for any particular purpose.

G.     The vacant land will be sold free and clear of all liens, claims, and interests with all such liens, claims, and interests attaching to the net proceeds of the sale to the same extent and having the same validity, priority, and enforceability as such interests had with respect to the vacant land immediately before the sale. Any issue regarding the extent, validity, priority, and/or

enforceability of any liens, claims, or interests against the vacant land with respect to the net proceeds of the sale will be determined by this court at a later date.

H.      The real estate broker's commission of 10% of the purchase price is approved.

I.      At closing, the Trustee will pay:

1.      the broker's 10% commission, which, based on the $75,000 offer is $7,500; and

2.      transfer taxes, property taxes, property insurance, title work, and other expenses associated with the sale at closing.

The balance of the sale proceeds will be paid to the Chapter 7 Trustee.

J.      The Trustee may: a.) impose additional terms and conditions on the sale; b.) adjourn the auction; and c.) withdraw the property from the auction.

K.      The Trustee may execute all documents and agreements and perform such acts as may be necessary and appropriate to implement, effectuate, and consummate the sale.

L.      This order may be recorded or filed with the Oakland County Register of Deeds as evidence that all liens and interests with respect to the vacant land have been released and transferred to the proceeds.

M.      All federal, state, and local governmental agencies and departments are ordered and directed to accept all filings necessary and appropriate to consummate the transactions contemplated by this order.

N.      The 14-day stay provided for in Bankruptcy Rule 6004(h) shall not be in effect with respect to the sale, and this order is effective and enforceable immediately upon entry.

O.      Prime Development Team, LLC is deemed a good faith purchaser for purposes of 11 U.S.C. § 363(m).

P.      The Court shall retain jurisdiction to enforce the terms of this order.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Sidney E. Taylor, xxx-xx-8663        Case No. 17-55790-MBM
2250 Preserve Lane        Chapter 7
Rochester, MI 48309        Hon. Marci B. McIvor
          Debtor.

_____/

**NOTICE OF TRUSTEE'S MOTION FOR ORDER (1) APPROVING
SALE OF VACANT LAND FREE AND CLEAR OF LIENS, CLAIMS,
AND INTERESTS WITH ALL LIENS, CLAIMS, AND
INTERESTS ATTACHING TO THE PROCEEDS OF SALE;
AND (2) AWARDING FEE TO REAL ESTATE BROKER**

Chapter 7 Trustee Homer W. McClarty filed a motion for an order approving the
sale of vacant land on Heather Hills Rd. in Farmington Hills, Michigan; parcel nos.
23-29-427-023 and 23-29-427-024 for at least $75,000. A copy of the offer is
attached to the Trustee's motion. The Trustee believes that a sale of the vacant land
for $75,000 is in the best interest of the estate and its creditors. The sale will be
subject to the terms and conditions of the Trustee's motion and will be made free
and clear of liens, claims, or interests. The sale will be made as is, without any
representation or warranties, whether express or implied, including but not limited
to any warranty of merchantability, habitability, or fitness for a particular purpose.
The Trustee also seeks authority to pay the broker's commission, property taxes,
and other expenses associated with the sale, including title work, at closing.

Date and time of proposed sale: April 25, 2019, at 10:00 a.m. (EST)[1]

Location of sale:        Offices of Steinberg Shapiro & Clark
                   25925 Telegraph Rd., Suite 203
                   Southfield, MI 48033

Terms of sale: **On or before April 22, 2019**, prospective bidders must provide a
cashier's check or money order deposit in the amount of at least $3,000; and
adequate documentation to show an ability to fund the sale. Competing bids will

---

[1] The date and time of the sale is subject to change by the Trustee with notice to prospective
bidders that have timely submitted deposits.

begin at $78,000 and continue in increments of at least $1,000. The successful bidder's deposit will be non-refundable and applied toward the purchase price. Immediately following the sale, the successful bidder shall execute a purchase agreement at least as favorable as the purchase agreement attached to the Trustee's motion. Other terms and conditions may be obtained by contacting Tracy M. Clark, attorney for Trustee, at (248) 352-4700.

**Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to grant the Trustee's motion, or if you want the Court to consider your views on the motion, then within 21 days from the date this notice is served, you or your attorney must:

File with the Court a written objection or request for hearing explaining your position at:[2]

> U.S. Bankruptcy Court
> 211 West Fort Street
> Detroit, Michigan 48226

If you mail your objection or request for hearing to the Court for filing, you must mail it early enough so the Court will **receive** it before the 21 day period expires. All attorneys are required to file pleadings electronically.

You must also send a copy of the objection or request for hearing to:

> Tracy M. Clark, Esq.
> Steinberg Shapiro & Clark
> 25925 Telegraph Rd., Suite 203
> Southfield, Michigan 48033

If an objection or request for hearing is timely filed, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of the hearing.

---

[2] Objection or request for hearing must comply with Fed. R. Civ. P. 8(b), (c), and (e).

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief**.

Steinberg Shapiro & Clark

/s/ Tracy M. Clark (P60262)
Attorney for Trustee
25925 Telegraph Rd., Suite 203
Southfield, MI 48033
(248) 352-4700
Date: April 2, 2019          clark@steinbergshapiro.com

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Sidney E. Taylor,                                   Case No. 17-55790-MBM
                                                    Chapter 7
                          Debtor.                   Hon. Marci B. McIvor
_____/

## CERTIFICATE OF SERVICE

I certify that on April 2, 2019, I served copies as follows:

| | |
|---|---|
| Documents Served: | Trustee's Motion for Order (1) Approving Sale of Vacant Land Free and Clear of Liens, Claims, and Interests with all Liens, Claims, and Interests Attaching to the Proceeds of Sale; and (2) Awarding Fee to Real Estate Broker; Proposed Order; Notice; Certificate of Service |
| Served Upon: | Prime Development Team, LLC<br>Attn. Donald Payne<br>23098 Julieann Ct.<br>Farmington Hills, MI 48335 |
| | Jessica R. Toomer<br>Century 21 Today, Inc.<br>28544 Orchard Lake Rd., Suite 130<br>Farmington Hills, MI 48334 |
| | Oakland County Treasurer<br>1200 North Telegraph Rd.<br>Pontiac, MI 48341 |
| | Farmington Hills Treasurer<br>31555 W. Eleven Mile Rd.<br>Farmington Hills, MI 48336-1103 |
| Method of Service: | First Class Mail |

| | |
|---|---|
| Document Served: | Notice of Trustee's Motion for Order (1) Approving Sale of Vacant Land Free and Clear of Liens, Claims, and Interests with all Liens, Claims, and Interests Attaching to the Proceeds of Sale; and (2) Awarding Fee to Real Estate Broker |
| Served Upon: | Sidney E. Taylor<br>2250 Preserve Lane<br>Rochester Hills, MI 48309 |
| | All creditors with timely filed and allowed proofs of claim (*See* L.B.R. 2002-2) |
| Method of Service: | First Class Mail |

/s/ Christine T. Leach, Legal Assistant
Steinberg Shapiro & Clark
Attorneys for Trustee
25925 Telegraph Rd., Suite 203
Southfield, MI 48033
(248) 352-4700
cleach@steinbergshapiro.com

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Sidney E. Taylor,                                    Case No. 17-55790-MBM
                                                     Chapter 7
                          Debtor.                    Hon. Marci B. McIvor
_____/

**EXHIBIT LIST**

| Exhibit | Description |
|---------|-------------|
| A | Purchase agreement |

AuthentiSign ID: ~~~~~~~~~~~~~~~~~~~~~
AuthentiSign ID: 0C1DE32E3EED40B5-9B0F-F64A64267A2
AuthentiSign ID: 0308A456-1E4B-4F38-AA9A-D198C43A0814



# PURCHASE AGREEMENT

MLS#　218105981

| LISTING BROKER | Century 21 Today-FH | SELLING BROKER | Century 21 Today-F H |
|---|---|---|---|
| LISTING AGENT | Jessica R Toomer | SELLING AGENT | Jessica R. Toomer |
| AGENT ID # 255551 | OFFICE ID 25318301 | AGENTS ID # 255551 | OFFICE ID 25318301 |
| PHONE | (248) 855-2000 | PHONE | 248-855-2000 |

1. **PROPERTY DESCRIPTION:** The undersigned Buyer hereby offers and agrees to purchase property located in Michigan, City/Township/Village of ＿＿＿＿＿ County of ＿Oakland＿ Tax ID# ＿2329427023＿

Legal Description ＿T1N, R9E, SEC 29 HEATHER HILLS NO 2 BLY 100 FT OF LOT 61 AS MEASON MLY LOT LINE, ALSO THAT PART OF LOT 62 LYING N OF MLY＿

Also commonly known as＿＿0000＿＿ WOODRISING ＿＿＿＿＿＿Zip＿＿＿＿

Property described above shall include all available sub surface and mineral rights, all fixtures, improvements and appurtenances now in or on property, including all built-in appliances and equipment, shelving, cabinets, all lighting fixtures, ceiling fans, attached carpeting, all window treatments and hardware, attached mirrors, telephone system and instruments designed for system, television antennae, satellite dishes (if owned) and complete rotor equipment, storm doors, storm windows, screens, awnings, garage door openers and transmitters, water softeners and security systems (if owned), mailboxes, fences, fireplace inserts, doors, screens, gas logs, grates, gas attachments and equipment, attached humidifiers, all landscaping, fuel in tanks, central vacuum and attachments, and

Also included Parcel# 2326427024 ＿＿＿＿ Seventy-Five

**SEE Corrected Legal Descriptions**

Seller shall provide a bill of sale for all including personal property at closing. Exclusions specified in listing contract that are NOT specifically excluded herein shall be included in this sale.＿＿＿＿＿

03/19/2019 2. **PRICE:** Buyer agrees to pay the sum of ＿＿＿＿ ~~Sixty-Five~~ Thousand ＿＿＿＿ Dollars ($ ＿765,000.00＿ ) in consideration for which Seller will provide a ~~warranty~~ deed subject to existing building and use restrictions and easements and rights of way of record. Trustee's

3. **THE SALE TO BE CONSUMMATED BY:** (USE PARAGRAPH ☐ A ☐ B or☐ C
A. CASH SALE.
B. CASH SALE WITH NEW MORTGAGE. Delivery of the usual ~~Warranty~~ Deed conveying a marketable title. Payment of purchase money is to be made in cash or certified check. This agreement is contingent upon the Buyer being able to secure a ☒ conventional or ☐ FHA/VA (see attached FHA/VA Addendum made a part of hereof) mortgage not contingent upon sale or closing of other assets, in the amount of ＿TBD＿ and pay ＿TBD＿ down plus mortgage costs, pre-paid items, adjustments and flood insurance (if required) in cash. Buyer agrees to apply for such a mortgage within ＿＿＿＿＿ days from acceptance of this offer at his own expense. Buyer agrees that in connection with said application to lender, they will promptly comply with lender's request for necessary information required to process the loan application. If a firm commitment for such mortgage cannot be obtained within ＿30＿ days from date of acceptance, at Seller's option, this offer can be declared null and void and the Purchaser's deposit shall be returned. Written evidence of mortgage denial shall be immediately presented to Seller. The parties agree that if the appraised value of the Property is less than the Purchase Price, Buyer may declare this Agreement null and void and the Deposit shall be returned.
C. SALE BY LAND CONTRACT/MORTGAGE ASSUMPTION/SELLER FINANCING.
   (See appropriate land contract financing addendum attached and made a part hereof.)

4. **EARNEST MONEY:** Buyer is tendering with offer $ ＿0.00＿ in the form of a check. An additional $ ＿8,000.00＿ shall be deposited within ＿2＿ calendar days of final acceptance making total earnest monies on deposit $ ＿32,000.00＿. All monies shall be deposited by Broker/escrow agent in accordance with rules and regulations of the State of Michigan and applied to purchase price at closing. Earnest monies shall be disbursed ONLY in accordance with either: (a.) the terms hereof; (b.) a fully executed mutual release; or (c.) upon order of appropriate authority. If offer made is not accepted by Seller, earnest monies shall be returned to Buyer.

5. **ACKNOWLEDGMENT OF EARNEST MONEY DEPOSIT:** Received by (Company)＿Century 21 Today, Inc.＿
(Agent Name):＿Jessica R. Toomer＿ (Agent Signature):＿Jessica R Toomer＿

6. **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA):** Seller(s) affirm that they ARE ＿＿ (Seller(s) Initials) ARE NOT ＿＿＿(Seller(s) Initials) Residents of the United States. If Seller(s) are NOT Residents of the United States, then the parties to this agreement will be bound by the FIRPTA requirements.

Court final approval

7. **CLOSING:** Subject to all conditions herein, closing shall take place on ~~or before~~＿＿＿＿at Listing Office or otherwise mutually agreed location.

Buyer(s)

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.

1 of 4

Seller(s)

InstanetFORMS

Authentisign ID: 6EBA000FF-F59ED-4E20E-A0759-XX2DSFB9A6P45P452

Authentisign ID: 0308A456-1E4B-4F38-AA9A-D198C43A0814



8. **POSSESSION:** Seller shall deliver possession to Buyer ☒ at closing or ☐ within_____days after closing (closing to apply if no choice is made.) If possession is not delivered at closing, from and including day of closing, through date of vacating property, SELLER SHALL PAY the sum of $_____0.00_____ per day. Designated escrow agent shall retain from amount due Seller the sum of 1 1/2 times daily fee, times total days for said occupancy. Designated escrow agent shall disburse occupancy fee due Buyer every 30 days, upon written request from Buyer. Seller shall be entitled to any unused portion of occupancy fee as determined by date property is vacated and keys surrendered to ☐ Buyer ☐ Listing Broker ☐ Selling Broker. Seller is legally obligated to deliver possession as specified herein. If Seller FAILS to deliver possession as specified herein, Seller shall pay TWICE the daily occupancy fee per day and shall be liable for cost of eviction, actual attorney fees, damages and other costs incurred by Buyer in obtaining possession and collecting any amount due. Brokers have no obligation, implied or otherwise, as to condition of premises or for seeing that premises are vacated on date specified.

9. **AVAILABILITY OF HOME PROTECTION PLANS:** Buyer and Seller acknowledge having been advised of availability of home protection plans. Buyer ☐ Accepts ☒ Declines (check one) a 2-10 Home Buyers Warranty at a cost of $_____
Paid by ☐ Seller ☐ Buyer Other_____.

10. **SEWER AND WATER CHARGES:** Seller agrees to pay for all sewer and water charges to date of ☐ ~~CLOSING~~ ☒ POSSESSION (possession will apply if no choice has been made.) ~~Designated escrow agent shall retain from amount due Seller at closing $300.00, or more if needed for final water and sewer charges.~~ After water and sewer bills are verified paid, any unused portion shall be returned to Seller. — *Standard*          *Standard*

11. **TITLE EVIDENCE AND SURVEY:** Seller agrees to furnish Purchaser a Commitment of Title Insurance prior to closing and after closing, an ~~Advantage (Eagle-type)~~ Policy in the amount of the purchase price, bearing date later than the acceptance hereof and guaranteeing the title in the condition required for performance of this Agreement. The ~~Advantage (Eagle-type)~~ Policy is to be provided by a Title Company approved by the Listing Broker. Commitment shall be "marked up" at closing insuring through the date of recording. Buyer to secure and pay for survey, if survey is desired by Buyer.

12. **TITLE OBJECTIONS:** If objection to title is made, based upon written notice that title is not in marketable condition required for performance hereunder, Seller shall have 30 calendar days from date notified in writing of particular defect claimed, to either: (a.) remedy title; or (b.) obtain title insurance satisfactory to Buyer. Buyer agrees to complete sale within 10 calendar days of written notification or by date specified if later. If Seller is unable or unwilling to remedy title within time specified, Buyer will waive requirement in writing within 10 calendar days of written notification thereof, or Agreement may become null and void at Buyer's option.

13. **TAXES:** All property taxes due and payable on or before date of closing shall be paid by Seller. Current taxes shall be prorated and adjusted as of date of closing in accordance with due date of municipality or taxing unit(s) in which property is located. Buyer acknowledges that property taxes are subject to change. If taxes are not paid in advance, see addendum made a part hereof. Seller shall pay transfer taxes and other costs required to convey title. Buyer shall pay all costs for recording the ~~warranty~~ deed.

14. **ASSESSMENTS:** Seller shall discharge in full all public authority charges confirmed by said municipality or taxing unit(s) (special assessments, water, sewer, paving charges, etc.) which are currently due and payable. Buyer is responsible for other assessments including, but not limited to, capital and lateral charges (assessed, but value not yet determined) which are confirmed and become due and payable after closing.

15. **CONDOMINIUM/HOMEOWNERS ASSOCIATION ASSESSMENTS:** Current dues shall be prorated to date of closing. Any delinquent condominium/homeowner association dues/assessments/liens shall be paid by Seller at closing. Any and all dues/assessments/liens confirmed and becoming due and payable after closing will be paid by Buyer. (See Condominium Addendum made a part hereof if applicable.)

16. **RISK OF LOSS:** Seller is responsible for any damage to the Property, except for normal wear and tear until the closing or possession, whichever is later.

17. **DISCLAIMER OF BROKER(S) AND RELEASE:** Broker(s) and Broker(s) agents specifically disclaim responsibility for the condition of property and/or for performance of Agreement by the parties. Parties acknowledge that they are not relying on any representation or warranties that may have been made other than those in writing, and the parties waive and release and relinquish any and all claims or causes of action against the Broker(s), their officers, directors, employees and/or their agents for the condition of the Property or the performance of this Agreement by the parties. Broker(s) and its agents are not experts in the areas of law, tax, financing, surveying, structural conditions, hazardous conditions, or engineering, and Buyer acknowledges that Buyer has been advised to seek professional advice from experts in these areas.

18. **MAINTENANCE OF PROPERTY:** Seller is responsible to keep property in substantially the same condition as of date of Agreement. Seller is responsible to maintain grounds and keep all systems in working order until property is vacated and keys are surrendered by Seller except for conditions disclosed in Seller's Disclosure Statement or conditions discovered by Buyer as part of inspections. In the event property has been winterized, it shall be the obligation and expense of Seller to de-winterize property prior to closing. Seller agrees to leave property broom-clean and free of debris and personal property.

19. **FINAL WALK-THROUGH PRIOR TO CLOSING:** Buyer reserves right to walk through property within 48 hours prior to closing to determine whether terms of Agreement have been met.

20. **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between Buyer and Seller. No agreement shall be binding except those in writing and signed by all parties involved. Prior negotiations and verbal agreements will not be binding.

Buyer(s)

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.

Seller(s)
Seller(s)

Instanet FORMS

Authentisign ID: 0EPA22HFF-RED4ED5A0Z8-JZ6RDA8A5FD2
Authentisign ID: 0308A456-1E4B-4F38-AA9A-D198C43A0814



21. **SUCCESSORS AND ASSIGNS:** This Agreement shall bind executors, administrators, successors and assigns of the parties.

22. **FACSIMILE/ELECTRONIC AUTHORITY:** Parties agree that this offer, any counteroffer or acceptance, may be delivered by use of facsimile/electronic authority with signatures, and that initials and modifications shall be deemed valid and binding upon the parties as if original signatures.

23. **TIME IS OF THE ESSENCE:** Buyer and Seller understand that no extensions of time limits contained herein are expected or agreed to unless specified in writing and signed by both Buyer and Seller. Time is of the essence.

24. **SELLER'S DISCLOSURE STATEMENT:** (Buyer(s) to initial only one.) ____ Vacant land [DP]
_____ A. With Disclosure: Buyer has, prior to writing this offer, received Seller's Disclosure Statement.
_____ B. Without Disclosure: All Parties understand that Seller's Disclosure Statement was not available at time this offer was written. [HM]
Seller shall provide Buyer with a Seller's Disclosure Statement with Seller's acceptance of this offer pursuant to Public Act 92 of 1993.

25. **DEFAULT:**
A. **BUYER:** In the event Buyer fails to fulfill obligations set forth herein or fails to close this transaction by time and manner provided, Seller may elect to enforce terms herein, declare sale void, retain deposit (per Paragraph 4), and/or seek available legal or equitable remedies. If a sale is not consummated because of the Buyer(s) failure to perform, 25% of the deposit made shall be retained by Century 21 Today, Inc.
B. **SELLER:** In the event Seller fails to fulfill obligations set forth herein or fails to close this transaction by time or manner provided, Buyer may elect to enforce terms herein, declare sale void, be entitled to refund of deposit (per Paragraph 4), and/or seek available legal or equitable remedies.

26. **FEES:** Buyer agrees to pay closing fees charged by lender and/or Title Company and a processing fee of $250.00 payable to selling Broker at closing. Seller shall pay transfer fees and other costs required to convey title.

27. **TIME LIMIT:** Buyer is making this offer valid until_____ ☐ AM ☐ PM on_____or until withdrawn in writing.

28. **COUNTEROFFER:** In the event Seller makes any written changes to terms and conditions herein, such changes, if initialed and Seller Acceptance executed, shall constitute a counteroffer by Seller to Buyer, which shall remain valid until_____☐AM ☐ PM on _____. Acceptance of counteroffer by Buyer occurs when Buyer initials each change, signs Buyer Acknowledgment of Acceptance (bottom line), and delivers notice to Seller by time stipulated above.

29. **ADDITIONAL DOCUMENTS ATTACHED:** The Seller's Disclosure Statement, Lead Based Paint Disclosure, Agency Relationship Disclosure, plus the following checked items are also attached hereto and made a part hereof. [DP]

☐ FHA/VA Addendum          ☐ Unplatted Land Addendum      ☐ Contingency Sales Agreement   ☐ Swimming Pool Addendum

☐ Get An Inspection        ☐ Private Road Addendum        ☐ Condominium Addendum          ☒ Additional (General) Conditions [HM]

☐ Well & Septic Addendum   ☐ Financing Addendum           ☐ Vacant Land Addendum          ☒ Bankruptcy Addendum

30. **WELL AND SEPTIC SYSTEM INSPECTION:** See attached addendum made a part hereof, if applicable.

31. **PROPERTY INSPECTION/DUE DILIGENCE CONTINGENCY: Note:** Inspections required by FHA, VA, lenders, or municipalities are not made for, nor should they be relied upon by, Buyer. Broker(s) recommend that Buyer conduct independent private inspection(s) of property at Buyers expense. Due diligence may include, but is not limited to, any inspection(s) or research deemed necessary by Buyer, including: structural integrity, condition of mechanical systems, environmental status, health or safety conditions, surveys or infestation. **To ensure intended use of premises it is recommended that Buyer research:** square footage; building and use restrictions; easement; ordinances; regulations; school district; and/or property tax status. If buyer **DOES NOT** notify Seller, in writing, within **14** calendar days from date of final acceptance of Agreement that Buyer is dissatisfied with results of due diligence, Agreement shall be binding without regard to inspection(s). If Buyer notifies Seller, in writing and within specified time, that, in Buyer's sole judgment, Buyer is dissatisfied with results of due diligence, Buyer shall do one, or a combination, of the following within the contingency period stated above.
A. Present to Seller an amendment for mutual agreement that cites a list of repairs and/or conditions to be remedied.
B. Present to Seller an amendment for mutual agreement with a credit to be applied against the purchase price, and/or a price reduction, in full satisfaction of inspection contingency.
C. Present to Seller a Notice of Dissatisfaction with due diligence which shall render Agreement null and void, in which case Seller agrees to authorize Broker to return all earnest monies to Buyer.
D. In the event Seller and Buyer are unable to reach an Agreement to Buyer's proposals made under A or B, Buyer shall either elect to proceed with transaction by waiving this contingency in writing, or declare Agreement void by election of C within 3 calendar days of receipt of Seller's written response to A or B above.

Buyer: Does_____[DP]          Does Not_____desire to have Property Inspection.
            Buyer Initials                          Buyer Initials

[DP]                    © 2018 Realcomp II Ltd. Unauthorized copying of this contract is          [HM]      K
Buyers(s)               prohibited.                                                              Seller(s)
                                              3 of 4                                          InstanetFORMS

Authentisign ID: [illegible]
Authentisign ID: [illegible]-1E4B-4F38-AA9A-D198C43A0814

**Century 21**

TODAY, INC.

32. **SQUARE FOOTAGE CLAUSE:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE REAL PROPERTY OR IMPROVEMENTS THEREON IS APPROXIMATE. IF SQUARE FOOTAGE IS A MATERIAL MATTER TO THE BUYER, IT MUST BE VERIFIED BY THE BUYER DURING THE INSPECTION PERIOD.

33. **FLOOD INSURANCE:** Buyer may, at his expense, obtain a Floodplain Certification within __14__ calendar days from the date of Seller's acceptance of this Agreement. If the Certification discloses that the property is in a Special Flood Hazard Area, Buyer may notify Seller, in writing, within __2__ days from the date of the Certification that Buyer declares this Agreement null and void and the deposit shall be returned to the Buyer. Failure to notify Seller that the property is in a Special Flood Hazard Area within this same time period shall constitute a waiver of Buyer's right to terminate the Agreement under this paragraph and Buyer agrees to obtain a policy of flood insurance if required to do so by the mortgage lender.

34. **MUNICIPAL INSPECTIONS:** If the municipality where the property is located requires an inspection prior to sale, Sellers will pay for necessary inspections and required repairs, if any, and obtain written approval of municipality.

35. **LEAD-BASED PAINT DISCLOSURE/INSPECTION:** (For residential housing built prior to 1978.) VACANT LAND   [DP]

   A. _____ Buyer acknowledges that prior to signing the Agreement, Buyer has received and reviewed a copy of the Lead-Based Paint Seller's Form completed by the Seller on _____ the terms of which are incorporated herein by reference.

   B. _____ Buyer shall have a _____ day opportunity after date of Agreement to conduct an inspection of property for presence of lead-based paint and/or lead-based hazards. (Federal regulations require a 10 day or other mutually agreed upon period of time.) If Buyer is not satisfied with results of this inspection, upon notice of Buyer to Seller within this period, Agreement shall be terminated any deposit shall be refunded to Buyer.   [HM]

   C. _____ Buyer hereby waives an opportunity to conduct a risk assessment or inspection for presence of lead-based paint and/or lead-based paint hazards.

36. **LIABILITY OF BUYER FOR DAMAGE:** Buyer shall be solely responsible for any and all damage to property as a result of any and all inspection(s) of property authorized by or conducted by Buyer. Buyer shall pay for any and all necessary repairs to restore property to its condition prior to inspection(s) or shall reimburse Seller for actual cost of such restoration.

37. **BUYER ACCEPTANCE OF CONDITION:** If Buyer elects to close regardless of conditions disclosed in due diligence period, Buyer shall be deemed to have accepted property in its "AS IS" condition. Buyer hereby knowingly waives, releases and relinquishes any and all claims or causes of action against Brokers, their officers, directors, employees and/or their agents for condition of property.   [DP]   [HM]

38. ~~SHOWINGS: Seller agrees not to allow property to be shown after inspection contingency is removed or has expired.~~

39. **LEGAL COUNSEL RECOMMENDATION:** BROKER(S) RECOMMEND(S) THAT ALL PARTIES TO THIS AGREEMENT RETAIN AN ATTORNEY TO PROTECT THEIR INTERESTS.

40. **OTHER TERMS AND CONDITIONS:**
    1) Buyer has 14 business days from date of acceptance to perform due diligence.
    2) This offer is contingent upon buyer obtain banking financial approval letter within 14 days of accepted offer.
    3) Closing of transaction is subject to bankruptcy court final approval. Buyer to close within 7 business days of court approval.

---

**BUYER SIGNATURE AND ACKNOWLEDGMENT OF RECEIPT:** Buyer hereby makes this offer with terms and conditions contained herein.

WITNESS  *Jessica R Toomer*    BUYER  *Donald Payne*
Jessica R. Toomer          Prime Development Team, LLC

DATE  03/13/2019            BUYER _____

---

**SELLER SIGNATURE:** Seller hereby agrees to terms and conditions contained herein. Seller acknowledges receipt of a copy of Agreement.

WITNESS  *Jessica R Toomer*    SELLER  X  *Homer McClarty, Trustee*
Jessica R. Toomer          Atty. Homer McClarty, Trustee

DATE  03/13/2019            SELLER _____

---

**BUYER ACKNOWLEDGMENT OF ACCEPTANCE:** Buyer by signing below acknowledges receipt of Seller's signed acceptance of Agreement or shall constitute a final acceptance of Seller's counteroffer.

WITNESS  *Jessica R Toomer*    BUYER  *Donald Payne*
Jessica R. Toomer          Prime Development Team, LLC

DATE  03/14/2019            BUYER _____

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.

InstanetFORMS

4 of 4

Authentisign ID: 08C1DE32-56E9-4DB5-96DF-F54A643267A2

## EXHIBIT A
## LEGAL DESCRIPTION

LAND IN THE CITY OF FARMINGTON HILLS, COUNTY OF OAKLAND, STATE OF MICHIGAN:

PARCEL I:

Part of Lots 61 and 62, HEATHER HILLS NO. 2, according to the recorded plat thereof, as recorded in Liber 81, Page 26 of Plats, Oakland County Records, and part of the Southeast 1/4 of Section 29, being more particularly described as follows: Beginning at the Northeast corner of said Lot 61; thence South 77 degrees 42 minutes 57 seconds East, 226.05 feet; thence South 21 degrees 30 minutes 58 seconds West, 207.35 feet; thence North 89 degrees 58 minutes 00 seconds West, 216.61 feet to the East line of Woodrising Lane (60 feet wide); thence 56.21 feet along said East line along a curve to the right (radius 196.88 feet, central angle 16 degrees 21 minutes 32 seconds, chord bears North 39 degrees 50 minutes 14 seconds East, 56.02 (feet); thence continuing along said East line, 163.93 feet along the arc of a curve to the left (radius 60.00 feet, central angle 156 degrees 32 minutes 46 seconds, chord bears North 30 degrees 15 minutes 23 seconds West, 117.50 feet); thence North 00 degrees 55 minutes 00 seconds West, 116.37 feet; thence South 78 degrees 20 minutes 30 seconds East, 100.00 feet to the point of beginning.

PARCEL II:

Part of the Southeast 1/4 of Section 29, Town 1 North, Range 9 East, Farmington Township, (now City of Farmington Hills), Oakland County, Michigan, being more particularly described: Beginning at a point South 77 degrees 42 minutes 57 seconds East, 225.05 feet from the Northeasterly corner of Lot 61, HEATHER HILLS NO. 2, according to the recorded plat thereof, as recorded in Liber Sir of Plats, Page 26, Oakland County Records; thence South 77 degrees 42 minutes 57 seconds East 176.00 feet; thence South 21 degrees 59 minutes 05 seconds West, 338.14 feet; thence North 76 degrees 03 minutes 60 seconds West, 80.00 feet; thence North 17 degrees 10 minutes 00 seconds West, 145.06 feet; thence North 21 degrees 30 minutes 58 seconds East, 207.35 feet to the point of beginning.

PARCEL III:

Part of the Southeast 1/4 of Section 29, Town 1 North, Range 9 East, Farmington Township (now City of Farmington Hills), Oakland County, Michigan, being more particularly described as: Beginning at a point South 77 degrees 42 minutes 57 seconds East, 400.05 feet from the Northeast corner of Lot 61, HEATHER HILLS NO. 2, according to the recorded plat thereof as recorded in Liber 81, Page 26 of Plats, Oakland County Records; thence continuing South 77 degrees 42 minutes 57 seconds East, 727.62 feet to a point on the North subline of Heather Hills, according to the recorded plat thereof as recorded in Liber 70, Page 1 of Plats, Oakland County Records;

Authentisign ID: 08C1DE32-56E9-4DB5-96DF-F54A643267A2

thence North 89 degrees 47 minutes 00 seconds West 335.59 feet to a point on the traverse line; thence North 89 degrees 47 minutes 00 seconds West 25.00 feet to the centerline of the stream; thence southerly along the centerline of the stream 135.00 feet; thence North 78 degrees 06 minutes 50 seconds West 265.45 feet; thence North 48 degrees 08 minutes 47 seconds West 150.00 feet; thence North 21 degrees 59 minutes 05 seconds East 138.14 feet to the point of beginning.

PARCEL IV:

Part of the Southeast 1/4 of Section 29, Town 1 North, Range 9 East, Farmington Township (now City of Farmington Hills), Oakland County, Michigan, being more particularly described as follows: beginning at a point South 77 degrees 42 minutes 57 seconds East 400.05 feet and South 21 degrees 59 minutes 00 seconds West 138.14 feet from the Northeast corner of Lot 61, HEATHER HILLS NO. 2 according to the recorded plat thereof, as recorded in Liber 81, Page 26 of Plats, Oakland County Records; thence South 48 degrees 08 minutes 47 seconds East 150.00 feet; thence South 78 degrees 06 minutes 50 seconds East 265.45 feet; thence South 19 degrees 43 minutes 00 seconds West 157.38 feet; thence North 70 degrees 17 minutes 00 seconds West 190.95 feet along the subline of said HEATHER HILLS SUBDIVISION NO. 2 and North 76 degrees 03 minutes 00 seconds West 220.00 feet; thence North 21 degrees 59 minutes 05 seconds East 200.00 feet to the point of beginning.

Sidwell: 23-29-427-023
23-29-427-024

Authentisign

*Donald Payne*
3/19/2019 9:28:31 AM EDT

03/18/2019

Authentisign

*Homer McClarty, Trustee*
3/18/2019 3:08:19 PM EDT

03/18/2019

Authentisign ID: [illegible]
AuthentiSign ID: 0308A455-1E4B-4F38-AA9A-D198C43A0814

gmar

# *Vacant Land Addendum*

This Addendum is attached to and made a part of a certain Purchase Agreement between the undersigned parties

dated _03/13/2019_ covering property commonly known as _0000 WOODRISING_

---

**ALL PARTIES SHALL INITIAL ANY CLAUSE WHICH IS PART OF THIS PURCHASE AGREEMENT**

All following conditions on this Addendum shall not commence until the Purchaser is furnished with a copy of a commitment of title insurance. (See paragraph 12 on the offer to purchase)

| Purchasers Initials | Sellers Initials | | |
|---|---|---|---|
| JP | HM | 1. | **SURVEY**- This offer is contingent upon the Purchaser's review and approval of a ☐ New ☐ Existing staked boundary survey by a a registered land surveyor at the ☒ Purchasers ☐ Sellers expense within ___ days from final acceptance of this offer. If the Seller or Seller's Broker does not receive written notice from the Purchaser of their dissatisfaction regarding such survey within _14_ days from the Purchasers receipt of the survey, this contingency will be considered satisfied and this purchase agreement shall be binding without regard to said survey. If the Seller or Seller's Broker does receive a written notice of objection within the time period provided, this sale shall be null and void and all earnest monies shall be refunded to Purchaser. |
| JP | HM | 2. | **LAND SPLITS** - If the land is being split from A LARGER PARCEL, Seller agrees to immediately obtain approval, at Sellers expense, from all the proper governmental agencies, and provide proof that the property meets all governmental requirements to split, and is in compliance with Land Division Act 1968 P.A. 591 and 1997 P.A. 87 and any amendments thereof. (Refer to "Unplatted Land Addendum") If Seller cannot obtain split approval within 60 days from acceptance, at the Purchasers option, can declare this offer null and void and deposit returned. |
| JP | HM | 3. | **Existing Well and/or Septic** - Purchaser is aware there is ~~an existing well and/or septic,~~ None to the best of Trustee (or) Realtor knowledge. Reference Paragraph 25 and recognize the Well and Septic Addendum as part of this agreement. |
| JP | HM | 4. | **WATER WELL** – This offer is contingent upon the Purchaser obtaining a satisfactory water well. Well drilling shall be ordered at Purchasers expense within five (5) days of the removal of paragraph/condition _____ In a non-interest this Addendum. Purchaser agrees to escrow with _____ in a non-interest bearing account, prior to drilling an amount equal to the highest estimate given by the well driller. If actual cost exceeds the escrowed amount, Purchaser agrees to bear any additional costs. If a satisfactory well is not obtained within 60 days of drilling, this offer may be declared null and void and the deposit returned. In any event if all conditions to this Addendum have not been met within 75 days of the acceptance of this offer, then this offer can be declared null and void by either party and the deposit returned. However, if water well drilling has begun but not finalized, Seller shall grant an extension of fifteen (15) days from completion of the well, if necessary. Purchaser shall have a period of four days from receipt of report to reject or waive the result of any such inspection in writing and deliver to Selling Broker. Any such written rejection shall terminate this agreement of sale and entitle Purchaser to the return of their earnest money deposit. If a written rejection is not received by the Broker with in such time period, the Purchaser will proceed to closing. These conditions will be followed based on the Well and Septic Addendum attached to this offer. |
| JP | HM | 5. | **PERK TEST** – This offer to purchase is contingent upon a Perk Test being conducted by the County Health Department within _14_ days after acceptance of this offer to purchase. Said inspection to be made at ☒ Purchasors expense ☐ Sellers expense. The results of the Perk Test shall be to the Purchasers satisfaction with the proposed septic field otherwise Purchaser has the option to declare sale null and void, and their deposit to be returned forthwith. Any cost below this figure is being deemed acceptable. A copy of the Perk Test results is to be given to the Seller/Agent. (Refer to paragraph 38 [NOTIFICATION] in the Purchase Agreement) |
| JP | HM | 6. | **SOIL TESTING & ENVIRONMENTAL DISCLOSURE** – Seller states to the best of his/her knowledge that the property being sold does not sit over or next to a current or abandoned landfill, toxic waste site, nor have any underground storage tanks on the property. Concerned Purchaser should check with the local township, county or federal agencies for precise information regarding environmental conditions affecting this property. Purchaser is aware that he/she may have an environmental evaluation made at their expense within thirty (30) days of final acceptance of this Agreement of Sale. If Selling Broker does not receive written notification within thirty (30) days of dissatisfaction with regard to evaluation, this contingency will be considered satisfied and this Agreement of Sale binding without regard to soil evaluation. |
| JP | HM | 7. | **UNDERGROUND STORAGE TANKS** - Seller states there is an underground/above-ground storage tank, and further agrees to have the ground surrounding the tank(s) evaluated for soil contamination within _0_ days of final acceptance of Agreement. If it is determined that soil contaminated and cost for cleanup exceed $__0.00__ Seller may declare this offer null and void and earnest money deposit returned to Purchaser. |
| JP | HM | 8. | Broker makes no warranties nor assumes any responsibility regarding environmental conditions affecting this property. Purchaser and Seller agree to hold Broker harmless from any problems that may arise at any future date and free of any claims, litigation costs or expenses. |
| JP | HM | 9. | **LIABILITY OF PURCHASER FOR DAMAGE** – Purchaser agrees, at Purchasers own expense to restore the property to substantially the same condition as existing before such testing by Purchaser. |
| | | 10. | **PUBLIC UTILITY CONNECTIONS** – Purchaser shall have _14_ days to confirm where the public utility connections are available and satisfactory to the Purchaser. |

Jessica R Toomer
Witness _Jessica R Toomer 11:29:43 PM EDT_
03/13/2019

Purchaser _Donald Payne_
Purchaser Print _Donald Payne 03/13/2019 03:22:43 PM EDT_

Date

Jessica R Toomer
Witness _Jessica R Toomer 11:29:43 PM EDT_
03/13/2019

Purchaser

X _Homer McClarty, Trustee_
Seller Atty _03/30/2019 03:14:47 PM EDT_

Date

Seller

**DISCLAIMER:** This form is provided as a service of the Greater Metropolitan Association of REALTORS® to it's members. Those who use this form are expected to review both the form and the details of the particular transaction to ensure that each action of this form is appropriate for the transaction. The Greater Metropolitan Association of REALTORS® is not responsible for the use or misuse of this form, for misrepresentation, or warranties made in connection with this form.

© 2018 Realcomp II Ltd. Unauthorized copying of this contract is prohibited.   instanetFORMS

Authentisign ID: 6B5A000FF7-F3F9ED-44305A0723-3X2B50A695F082

# ADDENDUM — PURCHASE AGREEMENT

- The sale is subject to approval by the United States Bankruptcy Court for the Eastern District of Michigan and the receipt of higher or better offers received by the Trustee on or before a public sale that will be scheduled approximately 22 days after the filing of pleadings seeking court approval of the sale.
- Closing will be completed after the later of: 15 days after written mortgage approval (if applicable); 15 days after court approval; or 15 days after the conclusion of the public sale, unless extended by mutual agreement.
- Buyer shall provide proof of ability to fund the sale or preapproval for financing within 10 days from the date of this Agreement.
- The property will be sold "as is, where is", without representations or warranties express or implied of any kind including, without limitation, warranties of merchantability, habitability, or fitness for any particular purpose.
- The property will be sold free and clear of all liens, claims, and interests with all valid liens, claims, and interests attaching to the proceeds received from the sale.
- Title to the property will be transferred by the Trustee's execution of a Trustee's Deed.
- In the event that Buyer is outbid at the public sale and Seller proceeds to closing and completes a sale to a higher or better offeror other than Buyer, Seller agrees to reimburse Buyer a "break-up fee" for his actual, out-of-pocket expenses incurred in connection with the tendering of his offer, including attorney fees, due diligence, appraisal and loan application expenses, not to exceed $500. Such amount shall not be payable unless and until completion of a closing on the sale of the subject property has been completed, and Seller has received the proceeds of the sale. The break-up fee shall be payable, if at all, from the net proceeds of the sale.
- Seller agrees that any higher or better offers received at the public sale must be in an amount at least $3,000 greater than the amount of Buyer's initial offer. Upon receipt of a competing offer at least $3,000 greater than Buyer's initial offer, Seller, in his sole discretion, may solicit offers in whatever increments he determines to be reasonable.
- Closing will be conducted by Chirco Title Company/Visionary Title Agency, LLC unless the parties agree otherwise.

Authentisign ID: 6EPA00FF7-F896D4EE75A0739-302870046A4FFE2

- Seller shall provide an owner's policy of title insurance with standard exceptions. Buyer may, at Buyer's election choose to change the title policy to a policy without standard exceptions or a policy with expanded coverage. Seller's expense will be limited to the cost of the Owner's policy with standard exceptions.
- This addendum shall control in the event any terms are inconsistent with the Purchase Agreement.
- The Purchase Agreement will not survive after closing.

Seller's initials: *HM*

Buyer's initials: *ΘP*